**AFFIDAVIT IN SUPPORT OF**
**A CRIMINAL COMPLAINT**

I, Edmilany L. Rubio, a Special Agent with the Department of Homeland Security Investigations, hereinafter referred to as HSI, being duly sworn, depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I am a Special Agent with Homeland Security Investigations (HSI), San Juan, Puerto Rico, and have been employed since May 2024.  I am currently assigned to the Homeland Security Task Force (HSTF) in San Juan, Puerto Rico.  Prior to my appointment as a Homeland Security Investigations Special Agent, I was appointed in 2019 as Director of Investigation and Complaints Division with the Puerto Rico Office of Inspector General.

2.  Your affiant as a Special Agent, has the responsibilities of conduct investigations of alleged manufacturing, distribution, or possession of controlled substances (Title 21, United States Code, Section 841(a)(1), importation of controlled substances (Title 21, United States Code, Section 952(a), smuggling of goods into the United States (Title 18, United States Code, Section 545), immigration-related matters (Title 8, United States Code) and other related offenses.

3.  Your affiant as a Homeland Security Investigations Special Agent, I have received formal and on the job training and I am authorized to investigate violations of laws of the United States and to execute and serve any order, subpoena, summons, warrant, or other process issued under the authority of the United States.  I am familiar with the statutes of the United States Code, and as a federal law enforcement officer, I have participated in investigations, surveillance, interviews,

interrogations, arrests, searches, seizures, administration of oaths, and in taking and considering evidence concerning the privilege of any person to enter, reenter, pass through, or reside in the United States.  Based on my law enforcement experience detailed herein, as well as my training, and experience of other law enforcement officers who are participating in this investigation, serve as the basis for the conclusion set forth herein.

4. This affidavit is intended to show merely that there is sufficient probable cause, justifying the issuance of an arrest warrant, I have not included details of every aspect of this investigation.  I make this affidavit based on my own personal knowledge and on oral and written reports by other federal, state, and/or local law enforcement agents and officers that investigated this matter. I am thoroughly familiar with the information contained in this Affidavit, either through personal involvement or through discussions with other law enforcement officers who have interviewed individuals or personally have obtained and reviewed information, which they in turn have reported to me. This affidavit does not contain all the information derived from this investigation only that which is sufficient to demonstrate probable cause to believe that a crime has been committed.

5. The facts and information contained in this affidavit are based on my personal knowledge, as well as upon information received in my official capacity from other individuals, including other federal, state, and local law enforcement officers. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint charging Ruben HERNANDEZ-Garcia    for 8 U.S.C. 1325-Improper entry by alien and 18 U.S.C. § 922(g)(5)– Possession of a firearm by a

prohibited person. I have set forth only the facts that I believe are necessary to establish probable cause to support this criminal complaint.

**Facts In Support of Probable Cause For Criminal Complaint**

6. On July 20, 2025, at approximately 10:30 hours, personnel from Immigration and Customs Enforcement (ICE) Homeland Security Investigations (HSI) encountered Ruben HERNANDEZ-Garcia in Carolina, Puerto Rico, while conducting an enforcement activity.  HERNANDEZ-Garcia admitted to agents he entered the United States illegally by a yawl (yola) at an unknown place in Puerto Rico on or about September 15, 2023, and to being unlawfully present in the United States.

7. After being administratively processed for being unlawfully present in the United States, HERNANDEZ-Garcia  was allowed to make a call which he made from his own phone. Upon the conclusion of his conversation, HERNANDEZ-Garcia  left his phone unlocked and face up on the desk.  While in this position, Agents observed a picture of what seemed a firearm in a bed.

8. Immediately, HSI agents stopped the conversation with HERNANDEZ-Garcia, advised him of his Miranda Rights and read them in his native language (Spanish), which he waived.

9. After waiving his rights, HSI agents provided HERNANDEZ-Garcia with a Consent to Search form, which HERNANDEZ-Garcia voluntarily signed and granted consent to HSI agents to search his cellphone

10. Once HSI agents obtained his consent, and HERNANDEZ-Garcia waived his rights, agents started interviewing HERNANDEZ-Garcia and searched his cellphone.

11. During the search of the cellphone, HSI agents observed an image of a firearm in a bed, and other one of HERNANDEZ-Garcia's hand displaying a firearm. HSI Agents asked HERNANDEZ-Garcia about the picture and the firearm, to which he admitted that he purchased the firearm for approximately $1,200.00, that he knows it works because he tested it and that he was hiding it in his house located at Villa Palmeras, 215 Colton Street, San Juan, PR.

12. HERNANDEZ-Garcia provided written consent to HSI Agents to recover the firearm from his residence, located at Villa Palmeras, 215 Colton Street, San Juan, PR. HERNANDEZ-Garcia also provided HSI agents with the house keys, made a drawing and described the access to get into the apartment and indicated the location of the firearm.

13. HSI Agents arrived at the residence located at Villa Palmeras, 215 Colton Street, San Juan, PR, followed the description provided by HERNANDEZ-Garcia of the two-story house, divided into four (4) apartments. The apartment was located on the second floor, the first apartment on the left.

14. HSI Agents located the gun following HERNANDEZ-Garcia's instructions, in the closet inside a commercial reusable black bag.

15. HSI Agents found a Glock pistol, model 43, 9mm, serial number AGLB 534 with three (3) magazines, one (1) loaded with ten (10) rounds, the other two (2) loaded with six (6) rounds each, and an additional thirty (30) rounds of ammunition in the bag. HSI Agents secured the firearm and the ammunition. Subsequently, HSI agents seized the firearm, the magazines and the ammunition. The firearm seized is consistent with the firearm seen in HERNANDEZ-Garcia's phone.

  

  

16. Record checks of the firearm revealed that it was reported stolen. Below is a picture

of the firearm.



Based on my training and experience, I know that firearms are not manufactured in
Puerto Rico. Therefore, it must have been transported through in interstate or foreign
commerce.

*CONTINUES ON NEXT PAGE*

17. Based on the foregoing facts and circumstances, your affiant submits that probable cause exists to believe that Ruben HERNANDEZ-Garcia violated 8 U.S.C. §1325-Improper entry by alien; and 18 U.S.C. § 922(g)(5)– Possession of a firearm by a prohibited person; illegal alien.

18. I declare that the foregoing is true and correct to the best of my knowledge.

**EDMILAN Y L RUBIO** Digitally signed by EDMILANY L RUBIO
Date: 2025.07.21 11:27:49 -04'00'

Edmilany L. Rubio
Special Agent
Homeland Security Investigations

Sworn to by telephone pursuant to Fed. R. Crim. P. 4.1 on July ___21___, 2025 at ___12:32 p.m.___.

Hon. Héctor Ramos Vega
United States Magistrate Judge
District of Puerto Rico